## THE RENCE.

### ANDERSON et al. v. THE RENCE.

*(District Court, N. D. California. May 6, 1890.)*

1. SHIPPING—CARE OF SEAMEN—LIME JUICE.
    It is no excuse for not serving out lime juice to the crew daily, as required by Rev. St. U. S. § 4569, that the seamen preferred to receive coffee instead of lime juice.

2. SAME—LIABILITY OF SHIP.
    When no lime juice is served, and the crew are attacked with scurvy, the ship is liable for the damage the seamen sustain on account of the disease, in the absence of any proof that they had contracted scurvy before the voyage began.

In Admiralty.
*H. W. Hutton*, for libelant.
*T. C. Coogan*, for claimants.

HOFFMAN, J. The claim of the libel in this case is for "wages, for provisions of bad quality, and a failure to furnish antiscorbutics, and for damages for the same cause; also, damages for furnishing improper subsistence, cost of maintenance during sickness contracted in the service of the vessel, and cost of care, under the statutory and general admiralty law." The evidence as to the quantity and quality of the provisions furnished to the men is very voluminous and conflicting. The seamen's statements with respect to the bad quality of the food are evidently much exaggerated, and I think it unnecessary to decide whether on that account alone they would be entitled to damages. Under the provisions of section 4568, their compensation is limited to a sum not exceeding one dollar a day during the time of the continuance of the supply of food of bad quality. The substantial cause of action, however, is for damages for pain and suffering caused by scurvy contracted during the voyage. By section 4569 of the Revised Statutes, the master is required to serve out to the crew lime juice and sugar daily at the rate of half an ounce each per day, and the vinegar weekly, at the rate of half a pint per week for each member of the crew. It is not disputed that the master during a considerable part of the voyage, amounting to about 25 days of its entire duration, omitted to serve the lime juice to the crew as required by law. The provisions of the statute in this respect are mandatory, and the captain will be liable to the infliction of a fine if convicted of an omission to comply with his duty in this respect, even though the omission should be followed by no ill consequence to

the crew. In this penalty, however, the seamen have no interest. It is imposed by the court after the master is convicted of a statutory offense. The excuse set up by the master for his failure to furnish the crew with lime juice, as required by law, is that the men preferred to receive coffee instead of the lime juice. The consent of the men to a violation of a positive provision of law can in no respect modify the captain's liability for his offense, nor does it, in my opinion, affect the seamen's right of recovery, if by reason of the omission their health has been impaired. It may well be doubted whether the captain is not required to compel the crew to take the lime juice, which is recognized as one of the most efficacious antiscorbutics known to science. In the performance of the duty to serve the men this article, their wishes are not to be consulted. Ignorance and recklessness are the well-known characteristics of seamen, and the surgeon of the ship or hospital might as well consult the wishes of his patients as to their diet and medication, or the father of a family the inclinations of his children with regard to hygienic precautions to preserve their health, as the master of a ship consult or be governed by the wishes of his crew. Had he proposed to substitute grog for the lime juice or coffee, no doubt the proposition would have been gladly and unanimously accepted. That the libelants were afflicted with scurvy cannot be disputed. Out of a crew of 20 seamen, 17 were found stricken with scurvy more or less seriously. The legislation of congress of the United States and Great Britain seems to be founded on the idea that lime juice is a sure preventive of scurvy. This, however, is not acknowledged by any medical authorities. The latest word of science, on the subject, so far as I can discover, is that lime juice, though very efficacious, frequently proves inadequate to prevent the appearance of the disease. The surer method is to add to the diet a liberal supply of fresh vegetables, or their juices, preserved in cans. The preservation of meats and vegetables by canning them has grown to be an extensive industry. Canned vegetables are readily procured, and at very reasonable cost. It is possible, in view of this fact, the court may feel themselves at liberty to treat the failure to provide the seamen with fresh vegetables, in addition to the lime juice required by law, as a failure to provide them with suitable alimentation to preserve them from the attacks of this formidable disease. It would certainly not be unreasonable that, in the laying in of supplies for seamen on long voyages, the master and owners should keep abreast with the progress of science, and the facts ascertained by experience and observation. In providing for the protection of cargoes, as against sweat or other damages to which they may be exposed, this court has held that any system or systems of ventilation found to be efficacious in preventing damages by sweat, which have been generally recognized as such, and usually, if not universally, adopted, must be provided by the ship, in order that it may under its contract deliver the goods in like good order and condition as when received. Preventable sweat would in the case supposed cease to be a peril of the sea, because its effects can be obviated by reasonable and proper precautions. I am unable to see why, when

scurvy is found to be a disease preventable by serving to the men the lime juice which the law requires, supplemented by a diet of fresh vegetables, the ship should not, not merely on grounds of humanity, but in the interest of the owners and the freighters, be required to provide such nutriment, and serve it to the crew. However this may be, it is plain that where the statutory requirement is disregarded entirely, and scurvy makes its appearance among the crew, in the absence of any proof or any reason to suspect that the seeds of the scurvy were contracted by the men on a previous voyage, the ship should be held liable for the damage sustained by reason of the disease. An interlocutory decree will be entered, declaring the liability of the vessel for the cause of action sued on, and an order of reference to the commissioner will be entered, requiring him to ascertain and report upon the duration and severity of the disease in the case of each seaman; also, whether they were treated in the hospital or by private medication, and, in the latter case, whether they had the opportunity to obtain admission to the hospital; and the effect of the disease on the patients, if in any instance a permanent loss of health has ensued; and also a just compensation for the time during which, by reason of the disease, they were incapacitated from working or obtaining a living.